(No. 5487-

CONSOLIDATED ENGINEERING DIVISION, A Division of AZZARELLI CONSTRUCTION COMPANY, A Corporation, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed April 27, 1971.*

BISSONNETTE AND NUTTING, Attorneys for Claimant.

WILLIAM J. SCOTT, Attorney General; LEE D. MARTIN, Assistant Attorney General, for Respondent.

BURKS, J.

This is a claim for a refund of $7,500.00, the amount of a bid deposit cashier's check which accompanied claimant's bid for a contract to do certain construction work for the respondent.

The facts set forth in the complaint and in claimant's brief are supported by the evidence submitted at the hearings on this matter and are not disputed by the respondent.

The testimony given at the hearings discloses that on July 11, 1967, claimant, by its employee, Charles S. Tudor, submitted a bid to the Department of Public Works and Buildings on a project known as No. 74-457 for the rehabilitation of an auditorium building located at the Kankakee State Hospital. Mr. Tudor personally delivered claimant's bid to the respondent's office in Springfield prior to the deadline on the day bids were to be opened. Just before delivering the bid, Mr. Tudor made a phone call to claimant's office in Kankakee to see if any sub-contractors had submitted lower cost proposals as sometimes happens. There being no changes thus indicated in the total amount of claimant's bid, Mr. Tudor, while still in the phone booth, filled in the blank lines in his bid on which the total amount is to be written in words and in numerals. The other parts of claimant's bid had been carefully completed in advance and Mr. Tudor had his cost sheets with him showing what the total amount would be, subject to any last minute charges.

In the space on the bid form where the amount of the bid was to be expressed in numerals, Mr. Tudor wrote the correct amount, $139,284.00. However, in the space where the amount of the bid was to be expressed in words, he inadvertently left out thirty-nine thousand and wrote: "one hundred thousand two hundred eighty-four". As stipulated by the parties, Mr. Tudor's cost sheets showed that the bid was intended to be in the amount he wrote in figures, $139,284.00.

Mr. Tudor put his bid in an envelope, sealed and delivered it to respondent's Architectural Office where it was stamped as received. Enclosed in the envelope with the bid was claimant's bid deposit, a cashier's check in the amount of $7,500.00. Whether this check should be recovered by the claimant or forfeited to the respondent is the question before the Court and the subject matter of this controversy.

In the afternoon of the same day, on a stage in the Armory, the bids were opened and read aloud. When they finally came to the job on which claimant was bidding, three other bids were read before claimant's bid was announced. Two of the three bids were slightly lower than the amount Mr. Tudor thought he had bid, intended to bid and had written in figures, the amount of $139,284.00. All other bids were substantially higher than Mr. Tudor had written in words, $100,284.00. Mr. Tudor said that, as far as he was concerned at this point, he had been eliminated by the lower bids. When the official in charge opened and looked at claimant's bid, he hesitated a few seconds, asked his assistant to look it over, and then read claimant's bid in the amount Mr. Tudor had erroneously written in words, "one hundred thousand two hundred eighty-four dollars". Mr. Tudor then got up, walked to the official's table and said, "There must be something wrong. That isn't what I bid." The official in charge showed Mr. Tudor the amount he had written in words and explained that he was required to read the numbers that were written in words rather than in figures.

Exhibits attached to the complaint show that claimant wrote to the Department of Public Works and Buildings on July 13, 1967, asking that its erroneous bid be withdrawn, but on September 21, 1967, the respondent awarded the contract to the claimant. Claimant thereupon notified the respondent that it could not carry out the contract. The respondent subsequently awarded the contract to another company which did the work. The respondent has refused to return claimant's $7,500.00 bid deposit.

The Court recognizes that respondent's officer in charge of opening bids followed correct procedure in reading the amount of claimant's bid as expressed in words rather than figures. Section 3-118(c) of the Commercial Code states, "Words control figures except that if the words

are ambiguous, figures control." In this case the words were not ambiguous.

The Court is also mindful of the fact that public officials should exercise extreme care and caution to avoid abuses of the competitive bidding processes which have come to light in the past. An example would be a case in which a low bidder, after being awarded a contract, discovers that he has made a mistake in his bid and is allowed to raise his price so long as it does not exceed the amount of the next lowest bid. Such a practice would be manifestly unfair to all other bonafide bidders and would open the door to collusion, favoritism and fraud. Such is not the situation in the case before us.

As we view the facts in this record, claimant's error was unintentional, not fraudulent, and did not amount to culpable negligence. It is important to note that claimant did not seek to have the contract awarded at the higher of the two figures shown in its bid but merely asked permission to withdraw its bid when it noticed its error. Here the respondent had immediate notice of the error in claimant's bid, knew that the amount involved in the error was substantial, and its position would not have been prejudiced by allowing the requested withdrawal of claimant's bid. The rule applicable to the facts in this case is well expressed in 13 AM. JUR.2d, *Building and Construction Contracts*, Sec. 107:

"A bid based on a unilateral mistake which is so great that it must be considered fundamental may be avoided in equity where the mistake is honestly made, without negligence, and the acceptor of the bid does not alter his position prior to notice of the mistake and would not be prejudiced by the cancellation."

The Illinois Supreme Court followed the above rule in *Bromagin* vs. *Bloomington* (1908) 234 Ill. 114. In upholding a decree rescinding a bid and restraining the forfeiture of a deposit, the Court noted that the bid was hastily prepared; that within a few hours after its acceptance the bidder.

notified the city attorney of his mistake (weight of pipe inadvertently used for cost price), and asked to be relieved; that the city engineer had himself also noticed the mistake when the bids were opened, and that there apparently was nothing to prevent the board from awarding the contract to another bidder; and said that the circumstances did not show such negligence as should bar the relief awarded.

*Bromagin* appears to be the only Illinois case on the subject other than an earlier case, *Steinmeyer* vs. *Schroeppel* (1907) 226 Ill. 9, wherein the bidder's mistake was not discovered until some time after the bid was accepted. In *Bromagin* the Court said that this case is distinguished from *Steinmeyer* in two respects: "First, here there seems to have been some reasonable excuse for the error made in calculating the bid; there was no such excuse in the Steinmeyer case. Second, here the party to whom the bid was made knew of the mistake at the time the bid was accepted; it was not so in the case in the 226th."

This Court agrees with claimant's contention that it should have been allowed to withdraw its bid without penalty, and is entitled to a refund of $7,500.00, the amount of its cashier's check deposited with the respondent.

Claimant is hereby awarded a refund in the amount of $7,500.00.